GARY M. RESTAINO
United States Attorney
District of Arizona

PATRICK E. CHAPMAN
Arizona State Bar No. 025407
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: Patrick.Chapman@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Scott Matthew Bernhardt,<br><br>Defendant. | No. CR-22-00328-PHX-SMB<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

The United States recommends that the Court sentence the defendant to no greater than 24 months of imprisonment, followed by a term of supervised release.

**I.      FACTS**

On March 10, 2021, Mexican authorities in Culiacan, Sonora seized a Glock 17 9 mm firearm that the defendant purchased 12 days earlier in Phoenix. (PSR at ¶ 10.) Based on this recovery, ATF agents contacted the defendant about the firearm, and he told them he sold it to a friend. (*Id*. at ¶ 11.) The defendant also told agents that he purchased other firearms apparently with the goal of selling them. (*Id*.) The defendant arranged with agents to disclose the bill of sale from the Glock 17 transfer, but when agents arrived at the defendant's stated place of employment, the defendant was not there, and security could not find anyone by the defendant's name at the company. (*Id*.)

Agents recontacted the defendant in August of 2021, and he admitted to buying multiple firearms for "Jorge," a friend in Mexico who was deported from the United States.

(*Id*. at ¶ 12.) The defendant stated that initially, he thought Jorge wanted a firearm for protection and to take his child shooting (*Id*.) The defendant then felt obligated to continue purchasing firearms for Jorge out of fear from the cartel. (*Id*.) The defendant admitted to being paid between $500 to $600 per firearm and stated that, to his knowledge, the guns were reaching Jorge in Mexico because Jorge would confirm receipt. (*Id*.) The defendant also admitted to purchasing drugs for sale from Jorge. (*Id*. at ¶ 13.) Agents subsequently dumped the defendant's phone and located messages between the defendant and Jorge dealing with straw purchasing, recruiting additional straw purchasers, and suspected illegal drugs. (*Id*. at ¶ 14.)

Ultimately, agents traced 11 firearm purchases to the defendant from February to April of 2021. (*Id*. at ¶ 16–20.) The government later indicted the defendant on 5 counts of Making a Material False Statement During a Firearm Purchase. On March 31, 2023, the defendant pleaded guilty to Count 5, for his straw purchase on April 26, 2021. (*Id*. at ¶ 6.)

## II. PRESENTENCE REPORT GUIDELINES CALCULATION

The United States agrees with the PSR's guidelines calculation of Level 17 and 24-30 months of imprisonment, following adjustments for the number of firearms, transportation of firearms out of the United States, and acceptance of responsibility. (PSR at ¶ 26–27, 33–34.) The PSR recommends a sentence of 24 months of imprisonment. (*Id*. at p. 15.)

## III. ANALYSIS

The United States recommends that this Court sentence the defendant to no greater than 24 months' imprisonment followed by supervised release. This recommendation is appropriate for several reasons. First, the defendant's conduct in this offense warrants such a sentence. The defendant is responsible for straw purchasing 11 firearms with knowledge that the weapons would be trafficked to Mexico. Further, based on his conversations with "Jorge," the defendant had reason to know that the firearms would be used by a violent drug cartel. Appropriately, the defendant receives an upward adjustment for this aspect of his conduct. USSG § 2K2.1(b)(6)(A).

Second, while the government is sympathetic to the defendant's opioid addiction and the circumstances that caused it, the defendant's actions in this offense and pretrial release performance outweigh such mitigation. Despite being charged with multiple firearms offenses that he committed to fuel a drug addiction, the defendant continued to abuse opioids during the pendency of this case. Further, the defendant overdosed in public after completing Crossroads Residential Treatment. The defendant's addiction compromised his judgment to the point that he was knowingly buying firearms to arm a Mexican drug cartel. The defendant acknowledged this but continued to abuse opioids while released. Thus, the defendant's continued opioid abuse, along with the near certainty that his firearms would be used for violence, outweigh any substance abuse mitigation.

Finally, the government's recommended sentence avoids unwarranted sentencing disparities. According to the Judiciary Sentencing Information (JSIN), from 2018 to 2022, there were 788 defendants who were sentenced under USSG § 2K2.1 with a Total Offense Level of 17 and Criminal History Category of I. (*See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.) Of those 788, 661 defendants were sentenced to prison, for an average length of 21 months and median length of 24 months. (*Id*.) Thus, the government's recommended sentence appropriately accounts for the defendant's impairments when compared to the sentences of similarly situated defendants.

## IV.    CONCLUSION

The government's sentencing recommendation is appropriate in light of the defendant's conduct and substance abuse history, and when compared to similarly situated defendants. Accordingly, the United States recommends that the Court sentence the defendant to no greater than 24 months' imprisonment.

Respectfully submitted this 21st day of June, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Patrick E. Chapman*
PATRICK E. CHAPMAN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the foregoing date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

*James Rael, Attorney for Defendant*

/s/ C. Covington
U.S. Attorney's Office

- 4 -